# EXHIBIT 1

```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


TERESA WOJCIK, on behalf of   )
herself and all others        )
similarly situated,           )
                              )
                   Plaintiff, )
                              )
       -vs-                   )   Case No. 15 C 2612
                              )
CROWN CASTLE USA, INC.,       )   Chicago, Illinois
                              )   December 10, 2015
                   Defendant. )   11:15 a.m.


                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE GARY FEINERMAN


APPEARANCES:

For the Plaintiff:      EDELSON, P.C.
                        BY:  MR. JAY EDELSON
                             MS. EVE-LYNN RAPP
                        350 North LaSalle Street
                        Suite 1300
                        Chicago, Illinois  60654
                        (312) 589-6370

For the Defendant:      OGLETREE, DEAKINS, NASH, SMOAK &
                        STEWART, P.C.
                        BY:  MR. HARRY J. SECARAS
                             MR. MICHAEL D. RAY
                        155 North Wacker Drive
                        Suite 4300
                        Chicago, Illinois  60606
                        (312) 558-1254

Court Reporter:

                   CHARLES R. ZANDI, CSR, RPR, FCRR
                        Official Court Reporter
                      United States District Court
                 219 South Dearborn Street, Suite 2128
                        Chicago, Illinois  60604
                     Telephone:  (312) 435-5387
                email:  Charles_zandi@ilnd.uscourts.gov
```

1  (Proceedings heard in open court:)
2      THE CLERK: 15 C 2612, Wojcik versus Crown Castle.
3      MR. EDELSON: Good morning, your Honor. Jay Edelson
4  for the plaintiff.
5      MS. RAPP: Good morning, your Honor. Eve-Lynn Rapp
6  for the plaintiff.
7      MR. SECARAS: Good morning, your Honor. Harry
8  Secaras and Michael Ray on behalf of the defendant.
9      MR. RAY: Good morning, Judge.
10     THE COURT: Good morning. So, we're here on a
11 post-judgment motion from the plaintiff to notify the putative
12 class of the settlement, the individual settlement.
13     Are the defendants -- is the defendant going to
14 oppose this motion?
15     MR. SECARAS: The defendant does oppose this motion,
16 yes, your Honor.
17     THE COURT: Okay. So, would you like to be heard in
18 writing?
19     MR. SECARAS: We can be heard in writing, or we could
20 argue today. It's your preference.
21     THE COURT: Well, tell me what you've got.
22     MR. SECARAS: Our initial belief, your Honor, is that
23 the Court doesn't have authority to entertain this motion.
24 Judgment was entered on the 26th of October. The information
25 on which the request or the motion is based was information

1  that was available long before plaintiff accepted the second
2  offer of judgment in the case. It wasn't raised until
3  November 6th for the first time. Plaintiff was paid fully
4  11-12 -- on 11-12.
5      So, the -- we don't think this falls into an
6  ancillary issue within the Court's jurisdiction. There's no
7  case or controversy that's pending before the Court, so our
8  initial position would be that the motion is not proper and
9  should be dismissed.
10     THE COURT: Okay. And -- but do you -- do you
11 quarrel with the plaintiff's argument that -- assuming that
12 the motion was timely, that the Court would have at least the
13 discretion, under Rule 23(d)(1)(B)(i), to give the putative
14 class notice?
15     MR. SECARAS: The Court would have discretion under
16 the rule. We don't believe that the Court should exercise its
17 discretion under the rule.
18     THE COURT: I see. So, why don't you -- could you
19 talk a little bit about that as well? And you don't have to
20 if you're not ready to.
21     MR. SECARAS: No. I mean, our research, Judge, has
22 unearthed no cases where a court has exercised discretion in
23 this context.
24     THE COURT: Meaning in the context where a class
25 certification motion was not filed in the first place?

1         MR. SECARAS: Yeah, in the context of there was
2 never, ever a defined class in this case because there was
3 never a motion filed. The cases that are cited in plaintiff's
4 brief all come in the context of a court either denying a
5 motion for certification or a class being decertified.
6         So, the reliance aspect on a plaintiff who thought --
7 a potential plaintiff or putative class plaintiff who thought
8 that he or she might be protected by the plaintiff in this
9 case, there's no reason for that. The plaintiff here never
10 took any action to protect that group of people and is now
11 looking to do that after she's accepted an offer of judgment
12 and after judgment's been entered.
13         So, we don't think that the discretion is warranted.
14         THE COURT: But didn't these websites refer to this
15 case as a class action?
16         MR. SECARAS: The websites -- I believe they did.
17         THE COURT: Okay. So, wouldn't somebody reading
18 those websites -- and the existence of those websites just
19 illustrates the point that there's websites for absolutely
20 everything, every subject matter on Earth.
21         But doesn't the fact that -- couldn't somebody in
22 Miss Wojcik's position have read the website and thought,
23 "Well, this is a class action. I'm okay for the time being
24 in terms of the statute of limitations"?
25         MR. SECARAS: Well, I guess I would raise a couple of

1 points in response to that, your Honor.  First, the websites
2 and the publication and even the communication with Miss
3 Wojcik occurred after she refused the first offer of judgment.
4 So, it occurred -- she and her counsel should have been aware
5 of that information when the offer of judgment was accepted,
6 and they could have raised this issue in conjunction with the
7 offer of judgment which was properly before you, not after the
8 judgment was accepted, almost as an after-thought.
9        The second point I would raise to that is the
10 putative class in this case is construction managers who
11 worked for Crown Castle in the State of Illinois.  That group
12 is approximately 15, probably less than 15 individuals.  So,
13 the -- the process here and the discretion -- there just
14 doesn't seem to be a whole lot of value in notifying that
15 group of people, particularly because their FLSA claims are
16 still alive, as they would have been otherwise.
17        So, under the FLSA and the opt-in process, they
18 wouldn't have this Rule 23 discretion notice to be out there,
19 so they're not in any worse position than they would have been
20 had the case been dismissed or settled otherwise and the
21 notice being issued.
22        THE COURT:  So, I think what you're saying, maybe I'm
23 wrong, is because a Rule 23 IMWL class was dead in the water
24 and the only thing they could possibly have done is be part of
25 a collective and there's no tolling until a member of the

1 collective opts in, they aren't really losing anything by not
2 getting notice because they wouldn't have been a member of a
3 23 class anyway?
4     MR. SECARAS: Correct.
5     THE COURT: All right. What do you have to say about
6 all this?
7     MR. EDELSON: Okay.
8     THE COURT: Well, let me ask you first off, why don't
9 you just have these websites report on the settlement? And
10 wouldn't that -- it would be congruent with the information
11 that's already out there. The information went out there on a
12 website, and if the website -- you're concerned that people
13 learned from the website that there was a class action. And
14 if the website then reports that there's a settlement,
15 wouldn't we be done? Wouldn't that suffice?
16     MR. EDELSON: That's a pretty practical and
17 reasonable idea. Let me respond to it, a few things.
18     First, I don't control those -- those websites. I
19 don't have the authority to tell them what to report on and
20 what not to report on.
21     Second, they're industry websites. If you read the
22 article, the whole point of the article suggests that our
23 client was being unreasonable. Our view is that they are
24 trying to help out the Crown Castles of the world, which is
25 exactly why they didn't then report, "By the way, the case is

1 over. Other people should be suing Crown Castle."
2     So, I would be surprised -- it's like going to the
3 *Wall Street Journal* and saying, "Now can you write about a
4 positive development in plaintiff's class action law?" I can
5 ask, but, you know, that's not what they're doing.
6     THE COURT: I see.
7     MR. EDELSON: I'm sorry.
8     THE COURT: No, go ahead.
9     MR. EDELSON: There are kind of a lot of points,
10 which I think I gathered. I want to discuss the timeliness
11 thing first, so -- I think there's some confusion there.
12     First of all, we couldn't possibly have been not
13 timely because we didn't do something before the second offer
14 of judgment was accepted. Once the second offer of judgment
15 was accepted, that's when the class, putative class was being
16 prejudiced, and at that point, we can raise the issue.
17     We couldn't go to your Honor and say, "Oh, by the
18 way, we think, for example, you're going to deny class
19 certification, or the case will -- something bad will happen
20 to the class, so act prophylactically." It wouldn't be before
21 your Honor.
22     In terms of why it took us this long, I think it's
23 because we were being prudent, reasonable attorneys. What we
24 did was we've been discussing this issue with them for a
25 while, where we gave them draft notices. We shared with them

1 the evidence of what we learned about why the class found out
2 about it. They were telling us the whole time that they were
3 going to get us some information. They did get us some
4 information. They weren't baiting us.
5       And we've done that on other aspects of the case,
6 too. On the fee dispute, there was a lot of stuff where we
7 didn't come to your Honor and ask for discovery because we
8 just exchanged it and we hashed it out and figured it out. I
9 think that's what good lawyers do. So, I don't --
10       THE COURT: That's fine. I think what the defendant
11 is making is some kind of jurisdictional argument, which is
12 because 28 days have passed, I no longer have jurisdiction to
13 entertain the motion. I think that's what he's --
14       Is that what you're saying?
15       MR. SECARAS: Yes, your Honor.
16       MR. EDELSON: That's easy to deal with. There is a
17 live dispute right now. We have a dispute about fees. So,
18 your Honor, they're not suggesting you can't decide that,
19 and -- I'd hope. Who knows. But there's a live dispute.
20 There is certainly a case in controversy over there.
21       We've had hearings. We have a status report to give
22 to your Honor. There's no question that your Honor has
23 jurisdiction of this case right now. They certainly -- in
24 their words, they haven't cited a single case suggesting
25 otherwise. And I even heard them say it is discretionary, and

1 I want to get to the discretionary part.
2 If their argument -- well, first, one other part.
3 They say there's no defined class. That's not true. We had
4 a complaint which had a class definition. By operation of
5 filing that complaint, the class -- the putative class has
6 rights. It tolls the statute of limitations for the putative
7 class members. There's no question about it. You look at the
8 complaint, you look at the class definition, those putative
9 class members now have something. They have the tolling.
10 When the offer of judgment was accepted the second
11 time, they then lost that. And that's what the Court --
12 that's what the courts talk about, the cases talk about, which
13 is: Are the putative class members in some way in a worse
14 position?
15 Their argument is, "Well, it's only 15 people, so
16 that means they're not in a worse position." I don't think it
17 is 15 people. I think it's more. But even if so, then why
18 not send them a letter?
19 If you look at when courts don't exercise discretion,
20 it's generally because of the notice issues, that the
21 attorneys are using the notice in order to trawl for new
22 clients. And if you read -- if you read the opinions
23 rejecting these types of motions because it's all just an
24 advertisement for the plaintiff's attorneys, our notice, which
25 we asked them to look at, and they didn't want it, which is

1  fine, is totally neutral. It doesn't mention our firm at all.
2  It doesn't say, "Call us, and we'll file a complaint." It has
3  the name of an administration office, a class action
4  administrator, who they can get whatever filings in the cases
5  and they can make whatever decision they want.
6       The other issue is the cost of the notice, which our
7  firm said we will bear. So, the question is: What is the
8  prejudice to them? And the real answer is the prejudice to
9  them is they don't want there to be individual suits.
10      The reason they overpaid our client, which they said,
11 under their view of the facts and law, they well overpaid her,
12 and they did that for a specific reason, was because it's
13 worth overpaying her to get rid of the more general liability,
14 which is hoping that nobody else sues and all the statutes of
15 limitations will run. That's exactly what's going on.
16      THE COURT: Well, yes, that is what's going on. And
17 maybe -- it's a question of whether I ought to give -- can
18 give notice, and if so, whether I ought to.
19      It's a situation where I -- given what's been --
20 given what's in the motion and given what's been said here, I
21 can't deny the motion outright, so I would like to hear in
22 writing from you, from the defendant. How long would you like
23 to respond?
24      MR. SECARAS: Can we get two weeks, your Honor?
25      THE COURT: Sure.

| | |
|---|---|
| 1 | THE CLERK: That's the 24th. |
| 2 | THE COURT: Is the 24th okay? |
| 3 | MR. SECARAS: 23rd. |
| 4 | THE COURT: Okay. We'll make it the 23rd. And then |
| 5 | I want to give you a chance to file a reply. |
| 6 | MR. EDELSON: That's over Christmas. Would you mind |
| 7 | two weeks? |
| 8 | THE COURT: No. |
| 9 | MR. EDELSON: Okay. |
| 10 | THE CLERK: January 6. |
| 11 | THE COURT: And then why don't we come in the week of |
| 12 | the 11th. |
| 13 | THE CLERK: How about we set you for -- one moment. |
| 14 | January 12th at 10:00 a.m. |
| 15 | THE COURT: If Crown Castle does have any swat with |
| 16 | those websites and could prevail on those websites to report |
| 17 | the settlement, that -- |
| 18 | MR. SECARAS: We can inquire. |
| 19 | THE COURT: -- that may give you -- |
| 20 | MR. SECARAS: I don't know if we have any more pull |
| 21 | than plaintiff does. |
| 22 | THE COURT: Okay. |
| 23 | MR. EDELSON: We can also just do a joint press |
| 24 | release or something. We're available to work it out with |
| 25 | them in any reasonable way, just so everybody knows. |

1         THE COURT: I'm not saying that that's what they're
2 going to be -- I'd order that; but it may be that -- and I'm
3 not saying that's all I would give them, but that may be where
4 this is going. But again, I've only read one side's position,
5 and my thoughts are tentative. All right?
6         MR. SECARAS: Understood. Thank you, your Honor.
7         MR. EDELSON: Thank you, your Honor.
8         THE COURT: All right. Thank you.
9   (Which were all the proceedings heard.)
10                     CERTIFICATE
11   I certify that the foregoing is a correct transcript from
12 the record of proceedings in the above-entitled matter.
13
14   */s/Charles R. Zandi*           *January 6, 2016*
15 Charles R. Zandi             Date
   Official Court Reporter
16
17
18
19
20
21
22
23
24
25